United States Court of Appeals,

Fifth Circuit.

No. 93-7647.

Dennis MORAN, Plaintiff-Appellant,

v.

The KINGDOM OF SAUDI ARABIA, et al., Defendants-Appellees.

July 29, 1994.

Appeal from the United States District Court for the Southern District of Mississippi.

Before REYNALDO G. GARZA, DeMOSS and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Appellant Dennis Moran ("Moran") appeals the district court's granting of The Kingdom of Saudi Arabia's ("Saudi Arabia") motion to dismiss Moran's complaint pursuant to FED.R.CIV.P. 12(b)(1). The motion was predicated upon lack of subject matter and personal jurisdiction under the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1602, *et seq.* The court dismissed Moran's complaint, finding that none of the exceptions to the FSIA applied to the facts of the case, and that Saudi Arabia was therefore immune from the court's jurisdiction. WE AFFIRM.

FACTS AND PROCEDURAL HISTORY

On December 21, 1987 Master Sergeant Al-Shareef ("Al-Shareef") was driving an automobile owned by Master Sergeant Al-Qahtani ("Al-Qahtani") on Keesler Air Force Base ("Keesler") in Biloxi, Mississippi when he apparently failed to yield the right of way in disregard of the traffic signal at an intersection and struck the side of another automobile driven by Moran, a civilian barber

employed at Keesler by the United States Department of Defense. Moran was seriously injured in the accident, having suffered permanent injuries to his head, neck and back.

Both Al-Shareef and Al-Qahtani are airmen in the Royal Saudi Arabian Air Force temporarily assigned to Keesler by the Saudi Arabian Air Force to receive air traffic controller training pursuant to a contract that Saudi Arabia had entered into with the United States Air Force. At the time of the accident, Al-Shareef was driving from his dormitory to the base hospital in order to make a doctor's appointment for an alleged "personal illness," which had been scheduled during a break from his training classes that day. By virtue of their assignment to Keesler, Al-Shareef and Al-Qahtani were entitled to receive medical benefits and health care at the base hospital, although they were instructed during their orientation at Keesler to schedule "routine" doctor appointments during non-training hours.

Al-Shareef and Al-Qahtani were authorized to own personal vehicles, but they were instructed that if they chose to do so they were required to maintain insurance and to agree to obey base traffic laws and regulations. Al-Shareef and Al-Qahtani obtained automobile insurance and license tags, and each contributed his own money to pay for the automobile expenses. Neither the United States nor the Saudi Arabian government ever reimbursed them for the purchase price of the automobile or for any expenses relating to it. Both Al-Shareef and Al-Qahtani used the automobile for personal reasons.

Moran filed suit against the United States Department of the Air Force, the United States Secretary of Defense, Saudi Arabia, Al-Shareef and Al-Qahtani based on personal injury and other related claims arising out of Al-Shareef's negligent failure to obey traffic signals and Al-Qahtani's negligent entrustment of his vehicle to Al-Shareef. Moran further alleged that Saudi Arabia was liable under the doctrine of *respondeat superior* for the negligence of Al-Shareef and Al-Qahtani. After allowing discovery on the jurisdictional issue, the district court dismissed the complaint against Saudi Arabia pursuant to Rule 12(b)(1) for lack of subject matter and personal jurisdiction, denying Moran's request for an evidentiary hearing.[1] The court found that none of the exceptions to the Foreign Sovereign Immunities Act applied to the facts of the case, and that Saudi Arabia was therefore immune from the court's jurisdiction.

STANDARD OF REVIEW

We review *de novo* the district court's granting of Saudi Arabia's motion to dismiss for lack of subject matter and personal jurisdiction due to Saudi Arabia's immunity under the FSIA. *Walter Fuller Aircraft Sales v. Rep. of Philippines,* 965 F.2d 1375, 1383 (5th Cir.1992). The court's denial of an evidentiary hearing is subject to an abuse of discretion standard of review. *Wichita Falls Office Associates v. Banc One Corp.,* 978 F.2d 915, 918 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 2340, 124 L.Ed.2d

---

[1]The district court also dismissed Moran's claims against the United States Department of the Air Force and the Secretary of Defense. However, Moran does not seek appeal on that ruling.

3

251 (1993).  The court's factual determinations may be set aside only if clearly erroneous.  *Villar v. Crowley Maritime Corp.,* 990 F.2d 1489, 1497 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994).

## JURISDICTIONAL IMMUNITY UNDER THE FSIA

The general rule under the FSIA is that foreign states are immune from the jurisdiction of the United States Courts.  28 U.S.C. § 1604 (1994).  However, a district court can exercise subject matter jurisdiction over a foreign state if one of the statute's exceptions apply.  *Id.*  The foreign state bears the burden of persuasion on the issue of immunity under the FSIA, but once a *prima facie* showing of immunity has been made, the plaintiff seeking to litigate in the district court bears the burden of coming forward with facts showing that an exception applies.  *Walter Fuller Aircraft Sales,* 965 F.2d at 1383.

Moran contends that the district court erred in dismissing his complaint for lack of subject matter and personal jurisdiction because the disputed jurisdictional facts concerning immunity under the FSIA were inextricably intertwined with the merits of *respondeat superior* liability alleged in his claim.  He argues that the district court erroneously applied a 12(b)(1) standard to resolve the jurisdictional issue on the basis of facts dispositive of the merits as well as the jurisdictional issue, and that instead the court should have applied a summary judgment standard.  Because the affidavits submitted to the court contained disputed facts, the application of the summary judgment standard would have resulted in

4

the court's denial of Saudi Arabia's motion to dismiss.

The Sixth Circuit has been the only circuit thus far to resolve the issue of the standard to be applied by the district court in resolution of the issue of jurisdictional immunity under the FSIA. In *Gould, Inc. v. Pechiney Ugine Kuhlmann,*[2] the Court reasoned that because sovereign immunity under the FSIA is immunity from suit, not just from liability, "postponing the determination of subject matter jurisdiction until some point during or after trial would be inappropriate." *Gould,* 853 F.2d at 451. Indeed, this Court has previously held that immunity under the FSIA is effectively lost if a case is permitted to go to trial. See *Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General,* 923 F.2d 380, 385 (5th Cir.1991).

A FED.R.CIV.P. 12(b)(1) motion for lack of subject matter and personal jurisdiction must be considered by the district court before other challenges "since the court must find jurisdiction before determining the validity of a claim." *Gould,* 853 F.2d at 450, citing *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). When a party challenges subject matter jurisdiction, the court is given the authority to resolve factual disputes, along with the discretion to devise a method for making a determination with regard to the jurisdictional issue. See *Land v. Dollar,* 330 U.S. 731, 735 and n. 4, 67 S.Ct. 1009, 1011 and n. 4, 91 L.Ed. 1209 (1947); see also *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70

---

[2] 853 F.2d 445, 450 (6th Cir.1988).

5

L.Ed.2d 212 (1981). The court's authority to consider evidence presented beyond the pleadings allows it to devise a procedure which may include considering affidavits, allowing further discovery, hearing oral testimony, conducting an evidentiary hearing. See *Gould,* 853 F.2d at 451. If the court chooses to allow additional discovery, it should be limited to only that which is necessary to determine the preliminary jurisdictional issue. *Id.*

In reviewing Saudi Arabia's 12(b)(1) motion to dismiss, the district court devised a procedure allowing additional limited discovery on the issue of jurisdictional immunity under the FSIA. After discovery was complete, the district court considered the allegations of the complaint along with the evidence produced during discovery including: Moran's affidavit, Al-Shareef's declaration and a witness's deposition. Therefore, we find that the district court did not err in applying a 12(b)(1) standard in determining the jurisdictional immunity issue under the FSIA. Further, the district court did not abuse its discretion in denying Moran's request for an evidentiary hearing. A court "may" consider oral evidence along with written, but an evidentiary hearing is not required. *Williamson,* 645 F.2d at 413. The court's consideration of the availability of Al-Shareef and Al-Qahtani to testify, having already returned to Saudi Arabia, and the ample written evidence before the court support its decision to deny Moran's request for an evidentiary hearing.

TORTIOUS ACTIVITY EXCEPTION

6

Moran asserts that the "tortious activities" exception to the general rule of immunity under the FSIA applies in this case. This exception provides that a foreign state is not immune from suit where money damages are sought for losses of property or personal injury caused by the tortious acts or omissions of its officers or employees. *De Sanchez v. Banco Central De Nicaragua,* 770 F.2d 1385, 1398 (5th Cir.1985).[3] However, a foreign state does not lose its presumed immunity from jurisdiction merely because one of its officers or employees commits a tortious act or omission. The exception can only be met if the officer or employee of the foreign state was acting within the scope of his employment at the time he committed the tortious act or omission. *Liu v. Republic of China,* 892 F.2d 1419, 1425 (9th Cir.1989), *cert. dismissed,* 497 U.S. 1058, 111 S.Ct. 27, 111 L.Ed.2d 840 (1990). Therefore, the "scope of employment" provision of the "tortious activity" exception requires a finding that the doctrine of *respondeat superior* applies to the tortious act or omission committed by the officer or employee of

---

[3]The "tortious activities" exception provides in pertinent part:

> (a) A foreign states shall not be immune from the jurisdiction of the courts of the United States or of the States in any case—
>
> (5) ... in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment....

28 U.S.C. § 1605(a)(5) (1994).

7

the foreign state. *Id.,* citing *Joseph v. Office of Consulate General of Nigeria,* 830 F.2d 1018, 1025 (9th Cir.1987), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988).

The district court properly applied Mississippi law in determining whether, at the time of the accident, Al-Shareef's act of driving to the hospital on Keesler for a doctor's appointment was within the scope of his employment as required by the "tortious activity" exception under the FSIA. State law, not federal common law, governs whether an officer's or employee's action is within the scope of employment in determining the applicability of the FSIA. *First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba,* 462 U.S. 611, 622 n. 11, 103 S.Ct. 2591, 2598 n. 11, 77 L.Ed.2d 46 (1983); *Liu,* 892 F.2d at 1425. Under Mississippi law, a determination that an employee's conduct falls within the scope of employment under the doctrine of *respondeat superior* requires a finding that the conduct was performed "incident to the ultimate purpose which constitutes [the employee's] job." *Marter v. Scott,* 514 So.2d 1240, 1242 (Miss.1987).

Moran argues that Al-Shareef's act of driving to the base hospital during duty hours to receive medical attention was incidental to his training assignment because he was assisting his employer by ensuring he would be able to perform his duty to attend training classes. At the time of the accident, he had a duty to obey military regulations on base, including traffic signals. Therefore, his trip to the base hospital during normal training hours constituted, at most, a minor deviation which did not take

8

his actions outside the scope of his employment.

Acting on its authority to resolve disputed facts, the district court found that at the time of the accident Al-Shareef was driving to the hospital on Keesler for personal reasons. The court's findings contain a detailed account of the substantial amount of supporting evidence. Therefore, we hold that the district court's resolution of disputed facts regarding the reason why Al-Shareef was driving to the hospital on Keesler was not clearly erroneous. Further, we hold that the district court did not err in concluding that Al-Shareef's trip to the base hospital for personal reasons was outside the scope of his employment. Al-Shareef's duty was to receive training on Keesler, not to make trips to the base hospital. Even if he was required to seek medical attention at the time of the accident, he was in control of all the details surrounding the task assigned: he was free to choose how to get medical treatment; where to get it; and when to get it.

## CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.