Revised February 14, 2003

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 00-20041
Consolidated With
No. 01-20823

———————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GEORGE L. J. WILSON,

Defendant-Appellant.

———————————————————————

Appeals from the United States District Court
for the Southern District of Texas

———————————————————————

February 13, 2003

Before WIENER and STEWART, Circuit Judges, and RESTANI, Judge.*

RESTANI, J.:

The primary issues before the court in this appeal of a criminal conviction are (1) whether the district court improperly applied the preponderance of the evidence standard in determining whether the statute of limitations was tolled under 18 U.S.C. § 3292; (2) whether the district court abused its discretion in admitting new evidence proffered by the Government at the hearing on remand; and (3) whether the district court's finding that the Government proved by a

_____

* Judge, U.S. Court of International Trade, sitting by designation.

preponderance of the evidence that it sent a foreign discovery request, necessary to toll the statute of limitations under § 3292, was clearly erroneous. Though Wilson's remaining claims are either untimely, without merit, or both,[1] we find that the district court clearly erred in concluding that the Government proved by a preponderance of the evidence that the discovery request was sent to the Bahamian Government. We therefore REVERSE the decision of the district court denying George Wilson's motion for reconsideration of his motion to dismiss the indictment as time-barred, REVERSE Wilson's conviction, and VACATE his sentence.

## BACKGROUND

In 1999, Defendant-Appellant George L. J. Wilson was convicted by a jury of multiple charges of conspiracy to commit money laundering, money laundering, mail fraud, and engaging in monetary transactions involving property derived from specified unlawful activity. *United States v. Wilson*, 249 F.3d 366, 368 (5th Cir. 2001) ("*Wilson I*"). In *Wilson I*, we affirmed Wilson's convictions in all respects, subject to the district court's ruling on remand, after an evidentiary hearing, on Wilson's motion for reconsideration of his motion to dismiss based on the statute of limitations. *Id.* at 380. Wilson now appeals the district court's July 26, 2001 order denying his motion for reconsideration.

---

[1] Wilson also claims that his conviction and sentence violate the Ex Post Facto and Due Process clauses of the United States Constitution. These arguments could have and should have been raised before both the trial court and before this court in Wilson's first appeal. *See, e.g.*, *Martinez v. Mathews*, 544 F.2d 1233, 1237 (5th Cir. 1976) (citation omitted) (noting exception to this general rule "when a pure question of law is involved and a refusal to consider it would result in a miscarriage of justice."). Regardless, the court in *Wilson I* affirmed in all respects the judgment and sentence of the district court and retained jurisdiction only as to the appeal of the trial court's ruling on the motion to dismiss after an evidentiary hearing. 249 F.3d at 380. We therefore decline to consider these new arguments.

2

Wilson was indicted on October 26, 1998. On July 13, 1999, the United States District Court for the Southern District of Texas denied Wilson's motion to dismiss the indictment as time-barred because, in 1994, it had entered an order suspending the statute of limitations for offenses then under investigation, pursuant to 18 U.S.C. § 3292. The order suspended the limitations period beginning November 24, 1993, the date on which the United States Department of Justice, Office of International Affairs ("OIA") allegedly made an official request for assistance to the Commonwealth of the Bahamas pursuant to a Mutual Legal Assistance Treaty ("MLAT"). The Government required assistance in obtaining Wilson's financial records from a Nassau bank.

Wilson filed a motion for reconsideration on July 22, 1999, challenging for the first time the Government's assertion that it had sent the discovery request to the Bahamas and claiming that, because the letter was never sent, the statute of limitations was not tolled. *Wilson I*, 249 F.3d at 372. Wilson presented evidence to the district court in support of the motion, but the court denied it without a hearing on August 4, 1999. *See id.* (detailing the evidence supporting Wilson's theory that the letter submitted to the court by the United States was merely a draft that was neither sent to nor received by the Bahamian Government). At the time the court considered the motion for reconsideration, the only evidence proffered by the Government to support its claim that the letter was sent was a copy of the disputed letter itself and the Government's "representation that it was sent . . . ." *Id.* In *Wilson I*, this court ruled that the evidence raised a factual issue as to whether the Government actually sent the discovery request to the Bahamas, and that the district court erred in denying Wilson's motion for reconsideration without a hearing. *Id.* The court remanded the case to the district court with instructions to conduct an evidentiary hearing on whether the letter was sent. *Id.* at 373.

3

On remand, the Government called one witness and introduced one additional piece of documentary evidence to prove that it sent the letter to the Bahamas. The Government's witness, Helma Lanyi, was a paralegal specialist[2] who had worked for the OIA since 1991. Lanyi did not work on the Wilson case until 1996 or 1997, but she claimed familiarity with the office policies and procedures in place in 1993 when OIA allegedly sent the MLAT request. The district court expressed concerns about the Government's failure to produce a Federal Express tracking number, air bill, or monthly invoice for the November 1993 letter. Lanyi's explanation to the court was that staff secretaries do not always keep such records, though official policy was to keep them for one year. Furthermore, Lanyi testified that OIA's failure to include the Federal Express tracking number on the letter explains why OIA could not request documentation from Federal Express that would have proven the letter was sent.[3] The Government then introduced, over defense objection,[4] a computer-generated correspondence log from OIA containing a data entry for a November 24, 1993 request for bank records to the Bahamas. Lanyi testified that if an

---

[2] Lanyi testified that paralegal specialists assist OIA attorneys with monitoring the progress of outgoing extradition and legal assistance requests and help respond to incoming requests.

[3] According to Lanyi, Federal Express cannot track a package or retrieve its corresponding invoice without the tracking number. There was no evidence, however, that the Government ever attempted to obtain evidence from Federal Express, though Lanyi testified that the company would have kept the relevant records for seven years.

[4] Wilson objected to the admission of the correspondence log on several grounds, including hearsay. He also argued that the log was inadmissible because the Government had not produced it in response to his motion for reconsideration, despite the fact that it was available to the Government and could have been introduced at that time. The court overruled Wilson's objections, and Wilson appeals the district court's admission of the log into evidence. As discussed *infra*, the court finds that the district judge did not abuse his discretion in admitting the correspondence log.

entry was made into this log, this signified that the document had been sent.[5] Lanyi, however, neither worked in OIA's docketing unit nor was she personally responsible for drafting or typing foreign legal assistance requests, copying them for OIA's records, or sending them out.

As to the discrepancy between the correspondence log submitted earlier by Wilson in support of his motion for reconsideration that did not reflect a November 1993 MLAT request ("old log"), *see Wilson I*, 249 F.3d at 372, and the one submitted by the Government at the evidentiary hearing on remand that did include such an entry ("new log"), Lanyi testified that she had mistakenly sent the wrong page from the report when responding to a request for proof that the November letter had been sent.[6] *Compare* Gov't Ex. 1 *with* Gov't Ex. 4. In the course of this explanation, however, Lanyi testified that: (1) the correspondence log listed documents in reverse chronological order, i.e., the first piece of correspondence in a case would be the last entry on the

---

[5] Lanyi explained that OIA's docketing unit logs incoming and outgoing correspondence into OIA's computer system upon the receipt of copies of outgoing correspondence that are provided by each team's secretary. The secretaries are responsible for mailing outgoing correspondence, via Federal Express or otherwise.

[6] On cross-examination, Wilson's counsel impeached Lanyi's testimony with a letter addressed to her from the U.S. Department of Labor, Office of Inspector General, which clearly requested proof that the November letter was sent: "Please provide confirmation that the November 1993 letter was in fact dispatched to the proper authorities in the Bahamas." *See* Letter from Edward P. Fischer, Regional Inspector General for Investigations to Helma Lanyi, OIA (Aug. 4, 1997), Record Excerpts ("RE") 13. Defense counsel also established that, within the same week, Lanyi's phone record reflected that the Attorney General's office in the Bahamas "had not received [OIA's] request for Gulf Union Bank records." *See* Lanyi Phone Record, RE 18.

Lanyi responded to the Labor Department's request for proof by sending the old correspondence log. *See* Gov't Ex. 4. The FAX cover sheet read, "Attached please find our OIA computer printout which shows that OIA sent the request in 1993," and explained that the log reflected all outgoing communications. *Id.* The log, however, included only one entry for an outgoing MLAT request, a request to depose three Bahamian citizens. There was no entry for a November letter.

log; (2) the page allegedly sent by mistake was the "last page," and (3) the entry in the log for a *December* 1993 letter was the "first entry."[7]  Nevertheless, Lanyi claimed that the entry for the November letter on the new log, a product of a new software system after a 1999 upgrade at OIA that was printed just two days prior to the evidentiary hearing, was not newly created and that the system was tamper-proof.

Wilson argued that the entry in the log was only circumstantial evidence and did not prove that the letter was sent,[8] especially in light of Lanyi's testimony that OIA's office procedures were frequently disregarded or considered as "discretionary."  On cross-examination of Lanyi, Wilson's counsel pointed out discrepancies in the form of the November 24 and the December 3 letters,[9]

_____

[7] The December 1993 letter did not request the documentation requested by the November letter and was not the basis of any decision to suspend the statute of limitations.  The statute was determined to be suspended for three years from the November letter, making the October 26, 1998 indictment timely.  *Wilson I*, 249 F.3d at 371.

[8] Wilson argued, "[The correspondence log] is not direct evidence of anything. . . . [S]omebody at OIA, as I understand the procedure, had a piece of paper put in her box or his box and typed [a correspondence entry] in the computer.  [Docketing clerks] have no personal knowledge that it was sent or not sent."  Tr. of Remand Hr'g at 68-69 (July 12, 2001).

[9] The November MLAT letter submitted by the Government to the district court in 1994 in support of its application to toll the statute of limitations did not have a date stamp on the first page, while another copy of that same letter submitted by the Government to the court in 1999 did have a date stamp.  *Compare* RE 20 *with* RE 9.
    Turning to the differences between the two MLAT letters allegedly sent by the same attorney at OIA to the Bahamas within 9 days of each other, Wilson showed that the December 1993 letter had various initials appearing in the letterhead area indicating, for example, the secretary who typed the letter and the person who signed the letter.  The November 1993 letter was blank in that area.  The December letter referenced the OIA docketing number for the MLAT request, which Lanyi testified was included on all official correspondence dealing with MLAT requests, yet the alleged November letter did not.  The December letter had a return address for OIA's Criminal Division on the upper right-
                                                                                                (continued...)

6

which Lanyi testified were not significant. Lanyi admitted that she had no personal knowledge of the correspondence procedures used by Deborah Gaynus, the OIA attorney whose signature appeared on both the November and December MLAT requests, and her secretary, Niges Forgee. In his cross-examination of Lanyi, Wilson's counsel also emphasized the other factual allegations which had led this court to remand in Wilson's first appeal, including the fact that the Government had no records of the Federal Express tracking number and that it made no attempt to obtain any evidence from Federal Express to prove that the letter was sent, despite the fact that the company keeps such records for seven years. Wilson's lawyer did not put on any additional evidence or call any witnesses, stating to the court that he felt that the Government had not met its burden of proving that the MLAT request was sent by a preponderance of the evidence.

The presiding judge allowed the attorneys to make closing arguments to the court. The Government argued that, based on Lanyi's testimony about OIA procedures and the correspondence log entry for the November 24 letter, the court should find the Government met its burden of proof. Responding to the court's questions, however, the Government's attorney apparently conceded that the Government had not met its burden, stating that "at best" the case was "a wash." The court stated that if it was a wash, then the Government did not prove its case by a preponderance of the evidence. The Government then tried to correct its unfortunate choice of words, admitting that it was a wash whether or not the Bahamian officials *received* the letter, but maintaining that it had shown by a preponderance of the evidence that the letter was *sent* and

<hr />

[9](...continued)
    hand side of the page; the November letter had no return address. The December letter indicated that there was an enclosure, i.e., the actual MLAT request for legal assistance; the November letter did not. *Compare* RE 9 *with* RE 12.

that it had provided explanations for all of the concerns raised by Wilson, the trial judge, and this court.

Wilson's closing argument emphasized the fact that the Government called Lanyi as its only witness – a paralegal who had no personal knowledge as to whether the disputed letter was sent in 1993 and who did not work on the Wilson case until at least four years later – but did not call as witnesses the three people with actual knowledge relevant to this disputed, and dispositive, issue: Gaynus, Forgee, or the docketing clerk who made the entry for the November letter. Lanyi testified that all three of these potential witnesses still worked for the Government at the time of the remand hearing. According to Wilson, the Government's failure to call those with personal knowledge of the letter and the circumstances of its transmission to the Bahamas was an implicit acknowledgment that their testimony would have hurt the Government's case.

Wilson also urged that the new correspondence log, which was admitted into evidence by the district court on remand, did not prove that the letter was sent, only that somebody put a copy of a letter that was allegedly sent into a docketing clerk's in-box. Because the docketing clerks themselves do not actually know whether a piece of correspondence they enter was mailed or not, Wilson suggested that the log entry could have been fabricated in some way, highlighting various circumstances where, if the log entry actually existed as of November 24, 1993, an OIA employee could have simply printed it out, allowing the Government to avoid all of the evidentiary problems presented here. For example, Wilson stressed that in 1997, Lanyi, by "mistake," sent the "wrong page" of the correspondence log in response to a request for proof from the Labor Department that the November letter was sent. Despite this obvious mistake, neither the requesting case agent nor the federal prosecutor sought the correct page of the log from OIA, though the

evidence reflected that they were both on notice that proof of OIA's transmission of the November MLAT was crucial to the Government's case. *See supra* notes 6-7 and accompanying text.

Two years passed without OIA providing the proper documentation as requested by the Labor Department and, in 1999, the federal prosecutor in this case finally sought proof from OIA that the letter was actually sent. The prosecutor needed such proof in order to respond to Wilson's original motion to dismiss the indictment as time-barred, yet OIA again did not (or could not) produce a log entry or other proof that the November letter was sent. Nevertheless, the entry inexplicably appeared on the new log introduced at the July 2001 evidentiary hearing. The evidence showed that, in the time between Wilson's motion for reconsideration and the remand hearing, OIA upgraded its MLAT request tracking system and converted it to a new Oracle program. Wilson argued that the system could have been tampered with or the entry added at that time.[10] Finally, Wilson argued that the Government's failure to subpoena Federal Express or produce other relevant records, along with proof that the Bahamian Attorney General never received the November request for bank records, supported Wilson's theory that the letter was never sent.

---

[10] Wilson also presented two alternative theories whereby the log entry was innocently, though erroneously, created. The crux of the first theory was that OIA attorney Gaynus attempted to type and transmit the November letter herself, but the letter was never actually sent out due to her secretary's absence during the Thanksgiving holiday. The second theory was that an outgoing fax to the Bahamian Attorney General in 1997, which transmitted the November 1993 MLAT request after he informed OIA that he never received it, was incorrectly docketed as of the date on the MLAT request attached, November 24, 1993, rather than the date of the FAX transmittal. The Government characterized these theories as speculative and conjectural.

9

On July 26, 2001, the district court, "[h]aving considered the evidence and arguments of counsel at the hearing, together with the submissions on file," denied Wilson's motion for reconsideration. The court found that, based upon Lanyi's credible testimony about office correspondence procedures, the OIA correspondence log, and the transmittal letter, the Government met its burden of proving by a preponderance of the evidence that OIA sent the MLAT request on November 24, 1993. This appeal followed.[11]

## STANDARD OF REVIEW

We review a district court's admission or exclusion of evidence for abuse of discretion. *General Electric Co. v. Joiner*, 522 U.S. 136, 141 (1997) (citations omitted). A district court's factual findings, such as the district court's determination here that the letter was sent, are reviewed for clear error. *United States v. Meador*, 138 F.3d 986, 991 (5th Cir. 1998). The district court's ultimate decision that the statute of limitations was properly tolled is a legal conclusion reviewed *de novo*. *Id.*

## DISCUSSION

### A. Government's Burden of Proof

Wilson argues that the district court improperly applied a preponderance standard for the Government's burden of proof at the hearing on remand. We considered and rejected this argument in Wilson's first appeal, holding that the plain language of the statute, 18 U.S.C. §

---

[11] We note that the original panel that presided over *Wilson I* rescinded its April 19, 2001 direction that it would "consider any appeals" from the district court's ruling after the evidentiary hearing, relinquishing control of the appeal to the present panel. Order of November 21, 2002; *see Wilson I*, 249 F.3d at 380.

10

3292, required the district court to decide by a preponderance of the evidence whether the statute of limitations should be tolled. *Wilson I*, 249 F.3d at 373. This decision cannot be reexamined either by the district court on remand or by this court in a subsequent appeal pursuant to the "law of the case doctrine." *United States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998) (quoting *Illinois Cent. Gulf R.R. v. Int'l Paper Co.*, 889 F.2d 536, 539 (5th Cir. 1989)). Therefore, Wilson's argument that the district court should have required the Government to carry a more stringent burden is without merit.

## B. Admission of OIA Correspondence Log

Wilson argues that the district court improperly considered Government Exhibit 1, the new correspondence log containing an entry for the November 24 letter, at the remand hearing. He contends that the Government should be estopped from using the log now because the Government did not present this document to the district court when it first considered his motion for reconsideration.

We remanded this case to the district court with instructions to conduct an evidentiary hearing to determine whether the letter was sent. *Wilson I*, 249 F.3d at 372-73. On remand, the district court is not limited to the record before it and "retains the discretion to admit additional evidence," *United States v. Bell Petroleum Servs., Inc.*, 64 F.3d 202, 204 (5th Cir. 1995) (citations omitted), unless bound by the appellate court's specific mandate to restrict its review in some manner. *See Becerra*, 155 F.3d at 754. By recognizing a disputed issue of fact and remanding the case for an evidentiary hearing, the court's prior opinion obviously contemplated the taking of additional evidence. *See Wilson I*, 249 F.3d at 372-73. Because the Government claims that the log entry for the November letter has always existed, the court is puzzled by the

11

Government's failure to produce this log in response to Wilson's motion to dismiss or motion for reconsideration. Nevertheless, given the purpose of the evidentiary hearing, the district court did not abuse its discretion in allowing the Government to present the evidence at its disposal to refute Wilson's claims that the letter was never actually sent.

## C. District Court's Factual Finding That the Government Sent a Formal Request for Legal Assistance to the Bahamian Government

Wilson argues that the district court clearly erred in finding that the Government had established by a preponderance of the evidence that the November 24, 1993 letter was sent. He directs this court to numerous deficiencies in the Government's proof: (1) the Government did not produce Federal Express or other relevant records to prove the letter was sent, despite the fact that such documentary evidence would have been readily available; (2) the Government did not call as witnesses the attorney who drafted and signed the letter, the secretary who would have typed and mailed it, or the data entry person who logged in the correspondence, even though they were still Government employees when the hearing on remand took place; (3) there was no Federal Express number, ID number, OIA case number, or other identifying information on the disputed letter, despite routine practice to include such information on all outgoing correspondence; (4) internal government documents existed that questioned whether the letter was sent out by OIA's correspondence unit, that exposed the Government's failure to obtain proof of mailing in response to its own inquiries, and that indicated it was never received by the Bahamian Government; (5) the Government had the opportunity and incentive to produce the new correspondence log earlier in the proceedings and failed to do so, yet managed to provide it at the remand hearing, after OIA's computer system upgrade had taken place and certain identifying information concerning log entries was changed in the conversion; and (6) the

12

Government's sole witness at the hearing on remand was a paralegal who did not work on

Wilson's case until 1996, approximately three years after the letter was allegedly sent, who had no

personal knowledge as to whether the disputed letter was actually mailed, who only testified as to

routine correspondence procedures, and who admitted that those procedures were flexible and

were not always followed by OIA staff. Thus, Wilson argues that the Government failed to prove

that the MLAT request was sent to the Bahamas in November of 1993 by a preponderance of the

evidence. The Government, without explanation, failed to respond to Wilson's argument that it

did not sustain its burden at the evidentiary hearing.[12]

This court must determine whether the district court committed "clear error" when it

found that the Government proved its case by a preponderance of the evidence. *See Meador*, 138

F.3d at 991.

> "The burden of showing something by a preponderance of the evidence . . . simply
> requires the trier of fact to believe that the existence of a fact is more probable than
> its nonexistence before [he] may find in favor of the party who has the burden to
> persuade the [judge] of the fact's existence." *Concrete Pipe & Products of Cal., Inc.
> v. Construction Laborers Pension Trust for Southern Cal.*, 508 U.S. 602, 622 (1993)
> (internal quotation marks omitted). In other words, the preponderance standard goes
> to how convincing the evidence in favor of a fact must be in comparison with the
> evidence against it before that fact may be found . . . . See *Greenwich Collieries v.
> Director, OWCP*, 990 F.2d 730, 736 (CA3 1993) ("A preponderance of the evidence
> is . . . [e]vidence which is . . . more convincing than the evidence . . . offered in
> opposition to it . . .") (internal quotation marks omitted)), aff'd, 512 U.S. 267 (1994).
> . . . "[W]hen the evidence is evenly balanced, the [party with the burden of

---

[12] The Government did offer a few paragraphs of argument in favor of the district court's
1994 order suspending the running of the statute of limitations in its *Wilson I* brief. This
argument is wholly insufficient to support the district court's July 2001 order denying
Wilson's motion for reconsideration after the evidentiary hearing. The Government's brief
in the present appeal argues that the preponderance standard is the appropriate burden of
proof under § 3292, but fails to respond to Wilson's argument that the Government did
not sustain this burden at the evidentiary hearing.

persuasion] must lose," *Director, Office of Workers' Compensation Programs v. Greenwich Collieries*, 512 U.S. 267, 281 (1994).

*Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997). A reviewing court, however, "will not reverse a lower court's finding of fact simply because [it] 'would have decided the case differently.'" *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)). Instead, the court must ask "whether 'on the entire evidence,' it is 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

A review of the "entire evidence" presented to the district court leaves us "with the definite and firm conviction" that the court was mistaken in its finding that the Government proved by a preponderance of the evidence that the letter was sent. *See id.* at 242-43. The district court's order denying Wilson's motion for reconsideration relied in part upon a presumption of mailing derived from the testimony of Lanyi. The court stated, "[t]he Fifth Circuit 'has long accepted proof of the normal practice of the use of the mails by means of circumstantial evidence, without requiring the testimony of a business' mail clerk, ostensibly the only person who could testify directly to the business practice of mailing and receiving letters.'" Order of July 26, 2001, RE 5 (citations omitted). The court found that Lanyi qualified as a person familiar with OIA's routine correspondence practices, and that her testimony was therefore sufficient to establish the letter was sent according to routine practices.

The district court failed to recognize an important distinction between Lanyi's testimony and that which is normally accepted as adequate to establish routine business practices. Lanyi was a paralegal, not a secretary or docketing clerk, and she testified that she was not responsible for drafting or mailing MLAT requests or for making correspondence log entries. Aside from her

14

personal inexperience with executing OIA correspondence procedures, her testimony demonstrates that there really were no consistent procedures or practices at OIA during the time in question. Furthermore, though Lanyi worked at OIA in November of 1993 when the MLAT was allegedly mailed to the Bahamas, she was not assigned to work on the Wilson case until approximately four years later. She testified, "I was not there at that time. So, *I do not know what the procedures were for Ms. Gaynus and her secretary* in what they sent out. . . . *There would not be a consistency* [in correspondence procedures] of the kind that you describe." Tr. of Remand Hr'g at 89 (emphasis added). This demonstrates that Lanyi was not a competent witness qualified to give evidence as to the correspondence procedures used by the OIA team responsible for the November letter. Accordingly, we find that there was insufficient evidence before the trial court to give rise to a presumption that the letter was mailed. *See Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (holding that "a copy of the properly addressed letter, a certified mail receipt and signed return post cards" was sufficient to raise the presumption that a letter was received in the due course of the mail).

Because the presumption of mailing does not arise in this case,[13] we must review the "entire evidence" to determine whether the district court's factual finding that the letter was sent

_____

[13] We note that the effect of the presumption relied upon by the district court here is simply to shift the burden of producing evidence that the letter was *not* sent to Wilson. *See Beck*, 882 F.2d at 996; *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir. 1983) (discussing burden shifting in the context of circumstantial evidence of routine mailing practices of the sender). Given the evidence Wilson presented in support of his theory that the November letter was only a draft that was never mailed by OIA or received by the addressee, even if we were to find that the presumption of mailing properly arose here, Wilson produced sufficient evidence of non-mailing to rebut the presumption. "If the party against whom the presumption operates produces evidence challenging the presumed fact, the presumption simply disappears from the case." *Pennzoil Co. v. F.E.R.C.*, 789 F.2d 1128, 1136-37 (5th Cir. 1986).

15

constituted clear error.  What particularly informs this court on review is that the Government failed to meet proof with proof in every step of the litigation here: first in its response to Wilson's motion for reconsideration, next at the remand hearing, and now here on Wilson's appeal of the district court's ruling in its favor.  In light of the persuasive evidence Wilson proffered in support of his position that the MLAT request was never mailed to the Bahamas, the Government's burden of proving that it was more likely than not that OIA mailed the November letter required more than circumstantial evidence of questionable origin and the testimony of an OIA employee wholly without personal knowledge relevant to the MLAT request at issue here.  "Whenever circumstantial evidence is relied upon to prove a fact, circumstances must be proved and cannot be presumed." *Montgomery-Ward & Co. v. Sewell*, 205 F.2d 463, 467 (5th Cir. 1953).  As described in detail above, Lanyi's testimony was often either contradictory (e.g., the circumstances surrounding her allegedly mistaken transmission of the wrong page of the old correspondence log in 1997), displayed a lack of personal knowledge (e.g., her testimony about office correspondence procedures, when she was never responsible for such matters in her position as a paralegal specialist and when she admitted total unfamiliarity with the procedures of the OIA attorney and secretary responsible for the November MLAT), or was wholly without probative value (e.g., her lay opinion that OIA's computer software was tamper-proof).  This testimony does not prove the circumstances surrounding the mailing of the letter and the subsequent correspondence log entry as required by *Sewell*.  Even if we consider the evidence as equally balanced, the Government still must lose. *See Rambo*,  521 U.S. at 137 n.9 (quoting *Greenwich Collieries*, 512 U.S. at 281).

16

In addition, this circuit has long recognized that a party's failure to call available witnesses or produce evidence that would clarify or explain disputed factual issues can give rise to a presumption that the evidence, if produced, would be unfavorable to that party. *See, e.g.*, *Streber v. Comm'r of Internal Revenue*, 138 F.3d 216, 221-22 (5th Cir. 1998); *United States v. Lehmann*, 613 F.2d 130, 135 (5th Cir. 1980); *United States v. Chapman*, 435 F.2d 1245, 1247 (5th Cir. 1970); *United States v. Johnson*, 288 F.2d 40, 45 (5th Cir. 1961). The court can only draw a negative inference when the missing witness has information "peculiarly within his knowledge," i.e., a party need not call a witness if her testimony would be cumulative, and the strength of the inference to be drawn from the witness's absence varies with the particular facts of each case.[14] *Streber*, 138 F.3d at 221-22 (citations omitted). In *Coyle Lines, Inc. v. United States*, 195 F.2d

---

[14] There is, however, an important exception to the applicability of the presumption: if the witness is "equally available" to both parties, any negative inference from one party's failure to call that witness is impermissible. *McClanahan v. United States*, 230 F.2d 919, 925 (5th Cir. 1956) (citation omitted). A missing witness's availability, however,

> is not to be determined from his mere physical presence at the trial or his accessibility for the service of a subpoena upon him. On the contrary, his availability may well depend, among other things, upon his relationship to one or the other of the parties, and the nature of the testimony that he might be expected to give . . . .

*Id.* at 926 (citation omitted). Thus, when the person not called is connected in some way to one of the parties and "it might be expected that his testimony, if given, would corroborate" that party's theory of the case, the missing witness is not considered to be "equally available" to both parties and the adverse inference arises. *Id.* at 925 (making adverse inference when missing witness was party's attorney whose legal advice was at issue); *see Labit v. Santa Fe Marine, Inc.*, 526 F.2d 961, 962-63 (5th Cir. 1976) (suggesting that the negative inference arises when the missing witness is an employee whose testimony would favor the employer-party); *Chapman*, 435 F.2d at 1247 ("When a witness is controlled by one party, failure to call the witness, if his testimony would elucidate facts in issue, creates an inference which the [court] is permitted to draw against that party").

17

737, 741-42 (5th Cir. 1952), this court found a "particularly strong" adverse inference from the Government's failure to call employee-witnesses who would have supplied direct testimony regarding the subject matter of the lawsuit.

The present case presents a similar situation to that addressed by this court over fifty years ago in *Coyle Lines*. The Government failed to call a single witness with actual personal knowledge of the November 1993 letter or its subsequent entry into the OIA correspondence tracking system, though all three of the Government employees involved in 1993 were still in the Government's employ at the time of the hearing on remand. The OIA attorney and secretary who allegedly drafted and mailed the letter would have testified to matters "peculiarly within [their] knowledge," and their testimony would have been directly relevant to the Government's case. Therefore, the Government's failure to call its own employees as witnesses when they had crucial information about this dispositive issue of fact gives rise to a "particularly strong" adverse inference against it. *See Coyle Lines*, 195 F.2d at 742.

The district court's error is highlighted by the Government's approach before this court. Its appellate brief completely ignores Wilson's argument that the Government failed to meet the preponderance standard, and the Government offers neither argument nor legal authority supporting the district court's finding that the letter was sent. Perhaps the Government found it a difficult argument to make. Nevertheless, the Government's complete failure to dispute any of the factual errors Wilson raises here or to otherwise defend the district court's ruling – in addition to the Government's failure to attempt to subpoena Federal Express records or to call any one of the potential witnesses who had personal knowledge of the November 1993 letter in the proceedings below – appears to us to be an implicit acknowledgment that the Government could

18

not, and did not, sustain its burden. Considering the lack of any direct evidence supporting the Government's allegation that the letter was sent, the questionable circumstances surrounding the Government's tardy production of the correspondence log, Lanyi's lack of capacity to testify regarding the mailing of the November 1993 MLAT, and the adverse inference we draw from the Government's failure to call available and pertinent witnesses, we hold that the district court clearly erred in finding that the Government proved that the MLAT letter was sent by a preponderance of the evidence. The trial court therefore improperly tolled the five-year statute of limitations on Wilson's offenses.

## CONCLUSION

In light of the foregoing, we REVERSE the decision of the district court denying Wilson's motion for reconsideration of his motion to dismiss based on the statute of limitations. Because Wilson was not indicted within five years of the acts allegedly constituting offenses under federal law, we REVERSE Wilson's conviction on all counts and VACATE his sentence.