# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-10744 & 14-10953

United States Court of Appeals
Fifth Circuit

**FILED**
August 19, 2015

Lyle W. Cayce
Clerk

BLAKE BOX, doing business as Blake Box Company,

Plaintiff–Appellant,

v.

DALLAS MEXICAN CONSULATE GENERAL,

Defendant–Appellee.

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:08-CV-1010

Before KING, SMITH, and ELROD, Circuit Judges.

PER CURIAM:*

Following a dispute over a real estate venture, Blake Box sued the Dallas Mexican Consulate General (Consulate) for breach of contract and related claims. The district court entered a default judgment in favor of Box, and the Consulate moved under Rule 60(b) to set aside the default judgment. The district court vacated the default judgment, concluding that it lacked subject matter jurisdiction under the Foreign Sovereign Immunities Act (FSIA). Box appealed and we remanded for limited discovery on fact issues

---

\* Pursuant to Fifth Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Cir. R. 47.5.4.

No. 14-10744 & 14-10953

pertinent to subject matter jurisdiction under the FSIA. On remand, the district court concluded that it had subject matter jurisdiction and reinstated the default judgment. The Consulate then moved under Rule 59(e) for a new trial or to reconsider the judgment, which the district court granted in part. Because the relevant facts were established as the law of the case, and because those facts are not jurisdictional facts, we vacate the district court's order granting the Rule 59(e) motion and remand for reinstatement of the default judgment. Box also moved in the district court for additional attorney's fees based on his status as a prevailing party. We affirm the district court's denial of these additional attorney's fees.

## I.

Box, a real estate broker, worked with Ambassador Enrique Hubbard and Mr. Hugo Juarez-Carillo (Consulate Officials) to secure a new building for the Mexican Consulate's Dallas office.[1] Box assisted the Consulate in locating a suitable building, and when the seller would sell the building only as part of a three-building package Box devised a transaction to purchase all three buildings and spin off one of the buildings to the Consulate. Box "identified prospective sites, enlisted contractors, met with city officials, and was involved in negotiations." Throughout this process, the Consulate Officials were in contact with the Mexican government and working through the government's lengthy official procedures for purchasing real property. Whether the Consulate Officials ever obtained actual authority to enter a joint venture with Box, or to purchase the building, is disputed by the Consulate.

---

[1] The facts as recited here are those alleged in Box's complaint and have all been admitted for merits purposes through the Consulate's default. *See Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (explaining that a defendant, by default, admits the plaintiff's well-pleaded allegations of fact for purposes of the merits).

No. 14-10744 & 14-10953

After Box spent extensive time on the transaction, the Consulate partnered with a third party and purchased the same buildings in a transaction identical to the one that Box had designed. Box sued the Consulate for: (1) breach of contract; (2) fraud/fraudulent inducement; (3) breach of fiduciary duty; (4) unjust enrichment; (5) quantum meruit; (6) promissory estoppel; (7) constructive trust; (8) attorney's fees; and (9) exemplary damages.

The Consulate, despite being properly served, did not respond to Box's complaint. Box moved for a default judgment. Before entering a default judgment, the district court assessed whether it had subject matter jurisdiction over the case under the FSIA. Under the FSIA, foreign governments are immune from suit subject to certain exceptions, including a "commercial activity exception." The district court determined that because the Consulate Officials had apparent authority to purchase the building, the commercial activity exception applied, and the district court had subject matter jurisdiction over the case. The district court entered a default judgment in favor of Box for $87,500 in value of services rendered, $6,725 in costs expended on behalf of the Consulate, and $3,000,000 in compensation for Box's "joint venture interest." The district court also awarded Box attorney's fees and costs in the amount of $31,464.83.

Over five months after the entry of the default judgment, the Consulate moved under Rule 60(b)(4) to set aside the default judgment. The district court reanalyzed the FSIA's commercial activity exception to determine whether the Consulate Officials had *actual* authority to purchase the building. The actual authority requirement is not contested. The district court concluded that the Consulate Officials lacked actual authority to purchase the building and, therefore, the commercial activity exception did not apply and the district court lacked subject matter jurisdiction over the case. The district court granted the Rule 60(b)(4) motion and vacated the default judgment in its entirety.

No. 14-10744 & 14-10953

Box appealed.  On appeal, we held that "[t]he district court abused its discretion in not allowing limited discovery on the issue of whether the Consulate's officials lacked actual authority." *Box v. Dall. Mex. Consulate Gen.*, 487 F. App'x 880, 887 (5th Cir. 2012) (unpublished) (*Box I*).  We vacated the district court's order granting the 60(b)(4) motion and remanded for "limited discovery" on the issue of whether the Consulate Officials had actual authority to bind the Consulate to the transaction.  *Id.*

On remand, the parties conducted discovery to determine the extent of the Consulate Officials' authority and the district court again addressed the Consulate's 60(b)(4) motion.  The district court analyzed the 60(b)(4) motion to determine whether it initially had an "arguable basis" for finding subject matter jurisdiction and entering the default judgment.  The district court concluded that "[t]he sole issue before the [district court was] whether the Consulate Officials had actual authority to engage in a commercial activity— not just whether the Consulate Officials had actual authority to purchase the Property from Box.  This lawsuit is based upon the facilitation of real estate services *and* the formation of a joint venture."

The district court analyzed the Mexican government's procedures for acquisition and/or leasing of real property assets abroad and concluded that "[t]he Mexican government indisputably authorized the Consulate to pursue the acquisition of a [sic] the property" because "the Consulate Officials were given full authority for all preliminary activities."[2]  The district court distinguished between the authority to enter a joint venture and the authority to actually purchase real property, but determined that "[it] need not reach . . . whether [purchasing real property] falls within the scope of the Consulate

---

[2] The district court considered the Mexican government's specific procedures, e-mails, and deposition testimony.

4

Officials' actual authority, as [it] determined the general authorization given to the Consulate for all activities leading up to the acquisition of the Property would include the retention of Box as a real estate broker." Because the district court found that there was actual authority for the Consulate Officials to agree to the transaction, the commercial activity exception applied, and the district court had subject matter jurisdiction. The district court denied the 60(b)(4) motion and left the default judgment in place.

The Consulate then moved under Rule 59(e) for reconsideration, or in the alternative, a new trial. The Consulate argued that the district court should have: (1) evaluated its subject matter jurisdiction under a *de novo* standard of review, rather than the "arguable basis" standard of review; and (2) evaluated whether a joint venture actually existed between the parties.

The district court agreed and concluded that it erred when it "assumed the existence of the joint venture." It reasoned that the existence of a joint venture was a jurisdictional fact and that even though a defendant admits a plaintiff's well-pleaded allegations as true by default—as the Consulate did here—this does not apply to jurisdictional allegations when those allegations are disputed by admissible evidence. The district court then determined that under Texas law the joint venture did not exist, so jurisdiction was improper.

The district court granted the Consulate's motion in part, vacating the default judgment in part and ordering that Box recover only $87,500 for services rendered and $6,725 for costs expended. The district court did not award Box the $3,000,000 for his share of the joint venture interest or additional attorney's fees. Box moved to alter or amend the judgment and the district court declined. Box then moved for attorney's fees in the amount of $265,315 based on his status as a prevailing party. While the motion for attorney's fees was pending, Box appealed the district court's partial grant of the Consulate's Rule 59(e) motion. The district court subsequently denied the

No. 14-10744 & 14-10953

motion for attorney's fees and Box appealed that judgment. Both appeals were consolidated before this court. The Consulate cross-appealed the district court's judgment leaving intact the $94,225 award, but later withdrew the cross-appeal in its response brief.

## II.

The existence of subject-matter jurisdiction under the FSIA is a question of law, reviewed *de novo*. *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 214 (5th Cir. 2009). Whether the law-of-the-case doctrine or its related doctrines, including the waiver doctrine, foreclose any of the district court's actions on remand is also a question of law that this court reviews *de novo*. *Med. Ctr. Pharm. v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011).

## III.

Box argues that the district court erred for three reasons: (1) a joint venture existed under the law of the case, thus the district court could not reexamine this fact; (2) on remand, the district court impermissibly went beyond the scope of our mandate; and (3) the existence of a joint venture is a merits question, not a jurisdictional fact.

The law-of-the-case doctrine provides that ordinarily "an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 184 (5th Cir. 2012) (internal quotation marks omitted). Box contends that the existence of the joint venture became the law of the case  after *Box I* because the Consulate failed to raise or brief the non-existence of a joint venture in *Box I* and our decision in *Box I* recognized the existence of the joint venture. The Consulate argues that it never conceded the existence of a joint venture and that we did not address the existence of a joint venture in *Box I*. The Consulate also argues that as the appellee in *Box I*, it had no obligation to challenge the joint venture's existence because it was

only defending the ruling below, which Box only challenged on the issue of actual authority.

In *Box I*, the Consulate's briefing repeatedly refers to the joint venture as the "alleged" joint venture and maintains its non-existence. However, the Consulate's arguments only addressed whether there was actual authority for the joint venture; they did not directly attack its existence. The Consulate never argued that the joint venture's non-existence defeated subject matter jurisdiction. The only issue in *Box I* was whether the Consulate Officials had actual authority to agree to the transaction. Whether subject matter jurisdiction existed turned only on the actual authority issue.

As for the Consulate's argument that as appellee it did not need to raise the issue in *Box I*, the Consulate raised numerous challenges to the district court's jurisdiction in *Box I*, including a lack of personal jurisdiction based on flawed service and "multiple meritorious defenses" that we considered and rejected. Despite raising multiple arguments regarding subject matter jurisdiction during *Box I*, the Consulate chose not to raise this one. Moreover, the Consulate did not raise its lack-of-joint-venture-as-jurisdictional-fact argument in its initial 60(b)(4) motion before the district court.

Our opinion in *Box I* treated actual authority as the only jurisdictional issue to be addressed on remand. Nothing in either the district court's 60(b)(4) order or our opinion in *Box I* considered the existence of the joint venture as a contested jurisdictional fact. For these reasons, the existence of a joint venture for jurisdictional purposes became the law of the case after *Box I*.[3]

---

[3] Even if the existence of a joint venture is a jurisdictional fact, subject matter jurisdiction does not create an exception to the law-of-the-case doctrine. *See Free v. Abbott Labs., Inc.*, 164 F.3d 270, 272–73 (5th Cir. 1999) (citing *Ferreira v. Borja*, 93 F.3d 671, 674 (9th Cir. 1996) *cert. denied*, 519 U.S. 1122 (1997) ("Surely a court that has decided that it has jurisdiction is not duty-bound to entertain thereafter a series of repetitive motions to dismiss for lack of jurisdiction.")).

No. 14-10744 & 14-10953

Box next asserts that the district court exceeded its authority under our mandate in *Box I* when it reconsidered the joint venture's existence. The mandate rule relates closely to the law-of-the-case doctrine. Under the "mandate rule," on remand the district court "must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court." *Demahy*, 702 F.3d at 184 (internal quotation marks omitted). On remand, a district court may only "consider whatever this court directs—no more, no less. All other issues not arising out of this court's ruling and not raised before the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below." *United States v. Marmolejo*, 139 F.3d 528, 531 (5th Cir. 1998). In *Marmolejo*, we cited "justice as well as judicial economy" as the reasons to "require a defendant to raise all relevant and appealable issues at the original [proceeding]." *Id.*

In *Box I*, the "discrete issue [on remand was whether] Hubbard and Juarez were authorized to purchase the consulate building, which if true would establish FSIA jurisdiction." 487 F. App'x at 885. The Consulate argues that "[a]bsent limitation in the remand, the district court [is] free to admit additional evidence and conduct all necessary review of the claims on any grounds before it." *See United States v. Wilson*, 322 F.3d 353, 360 (5th Cir. 2003). *Wilson* addressed whether the district court may consider additional *evidence* to decide a question on remand. Here, the district court considered an entirely *new question*. We remanded *Box I* "because actual authorization is a discrete issue conducive to limited discovery" and "[t]he district court abused its discretion in not allowing limited discovery on the issue of whether the Consulate's officials lacked actual authority." 487 F. App'x at 885, 887. While consideration of additional evidence was appropriate, nothing in *Box I* gave the

8

district court permission to extend its inquiry beyond the question of the Consulate Officials' authority.[4]

Even assuming *arguendo* that the district court was permitted to consider the existence of a joint venture on remand, the existence of a joint venture is not a jurisdictional fact.[5]  Federal claims litigation and admiralty law both provide useful analogies because in both areas a district court must often determine jurisdictional facts prior to addressing the merits of a claim. Box cites *Pure Power!, Inc. v. United States*, 70 Fed. Cl. 739, 742 (Fed. Cl. 2006) and *S.C. State Ports Auth. v. Silver Anchor, S.A.*, 23 F.3d 842, 847 (4th Cir. 1994) (*Silver Anchor II*) in support.  In *Pure Power!*, the government defendant argued that the Court of Federal Claims, a court of limited jurisdiction, lacked jurisdiction over the plaintiff's contract claim because there was no contract. *Pure Power!* held that "if the existence of a contract is well-pleaded, the court has the jurisdiction to determine, on the merits, if a valid contract actually exists" and "a claim is not beyond the subject matter jurisdiction of the [court] merely because the [defendant] asserts that it never had a contract with the plaintiff." 70 Fed. Cl. at 742.  Put another way, the district court does not lack jurisdiction to determine whether a contract exists simply because the ultimate answer is that it does not.

---

[4] *S.C. State Ports Auth. v. Silver Anchor, S.A.*, 23 F.3d 842, 847 (4th Cir. 1994) (*Silver Anchor II*), discussed *infra* regarding the jurisdictional question, is also analogous on the scope-of-the-mandate issue.  23 F.3d at 847 ("[W]e note that our [previous opinion] was premised on the assumption that there *was* a contract between [the parties].  We instructed the district court to determine only whether that contract was maritime or non-maritime in nature.  We did not instruct the lower court to engage in a freewheeling inquiry about whether any contract even existed.").

[5] The parties dispute whether the district court should have employed a *de novo* standard of review for assessing subject matter jurisdiction on a Rule 60(b)(4) motion or review for whether the court had "any arguable basis" for exercising subject matter jurisdiction.  Because we hold that the district court properly had subject matter jurisdiction under either standard, we express no opinion as to the proper standard of review.

*Silver Anchor II* is also persuasive.  In *Silver Anchor II*, the district court dismissed a maritime contract case on the basis that there was no contract because there was no personal guaranty of payment from the defendant, a required contract component.  The Fourth Circuit held that the existence of "a personal guaranty [was] dispositive on the merits," so "[t]o the extent that [the defendant] was challenging the court's jurisdiction on the ground that he gave no personal guaranty, he was also challenging the very existence of the [plaintiff's] cause of action."  23 F.3d at 847.  Similarly here, because the Consulate challenges subject matter jurisdiction on the ground that there was no joint venture, the Consulate is also challenging the very existence of Box's cause of action.

The Consulate attempts to distinguish *Silver Anchor II* because in *Silver Anchor II* "the existence of a contract went so much to the heart of the merits that it would be unfair to adjudicate it at the motion to dismiss stage," whereas here, the Consulate "is seeking to set aside a default judgment under Rule 60(b)(4) *after* the underlying merits have been established."  If anything, this distinction weighs in favor of Box.  In *Silver Anchor*, the court held that it was improper to dismiss the case for what was essentially a merits issue in "the guise of a jurisdictional dispute, much to [the] advantage" of the defendant, before reaching the motion to dismiss or summary judgment stage, where the facts would be viewed in the light most favorable to the plaintiff.  Here, it is not just that the facts would be viewed in the light most favorable to Box in later proceedings, but they have been conclusively admitted through the Consulate's default.

The Consulate next argues that the district court may always determine the jurisdictional facts as necessary to determine if it has jurisdiction, *even if* those facts have been admitted by a default for purposes of the merits inquiry.  This is correct—the district court must decide whether it has jurisdiction and

must weigh evidence and assess the merits insofar as they weigh on jurisdiction—but that is not the issue here.  That the district courts must answer jurisdictional questions does nothing to determine exactly which questions are jurisdictional.  The Consulate relies heavily upon *Jackson v. FIE Corp.*, 302 F.3d 515 (5th Cir. 2002) and *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169 (5th Cir. 1994) to argue that "facts presumed for purposes of the merits of the default can be revisited in the context of subject matter jurisdiction," and "at least in the context of the FSIA, those factual determinations can extend to the merits."  The Consulate seeks more from *Jackson* and *Moran* than they give.  Both cases stand for the proposition that a district court *is not barred* from deciding a jurisdictional fact simply because that fact is intertwined with, or also is, a merits fact.  But this does not support treating otherwise exclusively merits facts as part of the jurisdictional inquiry, nor does it have any relevance to the question of whether the joint venture's existence is a jurisdictional fact under the FSIA.

In *Jackson*, after a default judgment was entered against a foreign gun manufacturer, the manufacturer moved under Rule 60(b)(4) to vacate the judgment, arguing that the district court had lacked personal jurisdiction over the defendant manufacturer because under Louisiana's long-arm statute the defendant must have placed the gun in the stream of commerce for personal jurisdiction to be proper.  302 F.3d at 520.  We held that a fact's admission by default for merits' purposes does not automatically admit that fact for jurisdictional purposes and remanded for a determination of the jurisdictional question of whether the defendant put the gun into the stream of commerce. *Id.* at 531.  *Jackson* merely says that a district court must assess jurisdictional facts to determine if jurisdiction is proper, even if those facts are admitted by default for merits' purposes.  *Jackson* sheds no light upon whether the existence of a joint venture is a jurisdictional fact here.

No. 14-10744 & 14-10953

In *Moran*, a FSIA case, the plaintiff sued the Kingdom of Saudi Arabia following a Mississippi car accident with two Saudi government personnel. Under the relevant law, Saudi Arabia was only subject to jurisdiction under the FSIA if the officials were acting within the scope of their employment at the time of the accident. 27 F.3d at 173. Whether the officials were acting within the scope of their employment also bore on the merits of the case. The district court concluded that the officials were not acting within the scope of their employment and therefore dismissed the case because the court lacked jurisdiction under the FSIA. *Id.* We held that the district court acted properly by resolving Saudi Arabia's 12(b)(1) motion "before other challenges since the court must find jurisdiction before determining the validity of a claim." *Id.* at 172 (internal quotation marks omitted).

The Consulate argues that the question of whether a joint venture existed is analogous to the question of whether the officials in *Moran* were acting within the scope of their employment, but the Consulate overreads *Moran*. The question of whether the Saudi officials were acting within the scope of their employment, unlike the question of the existence of the joint venture here, was a *required* part of the jurisdictional analysis. Here, the FSIA exception applies to an "action [that] is based upon a commercial activity." 28 U.S.C. § 1605(a)(2). The analogous attack here would be that, for instance, the activity was not commercial, not that the activity did not occur. *Moran* demonstrates that jurisdictional facts will sometimes overlap with merits inquiries, but cannot be stretched to redefine what is jurisdictional in the first instance.

The Consulate insists that the Consulate Officials logically could not have authority to enter a joint venture that did not exist, but this is incorrect. It is entirely plausible that, for example, a government could give officials actual authority to spend a certain dollar amount to acquire a building, with

no further oversight. In such a scenario, there would be no question that the officials had actual authority to enter into a contract within those particular parameters. Whether the officials actually did enter a contract would be an entirely different question. As an alternative example, if the Consulate Officials had authority to purchase a building within Dallas city limits, or within a certain time frame, actual authority would exist—a separate question from whether the Consulate Officials exercised that authority. Because the authorization process here occurred contemporaneously with the creation of the joint venture, the Consulate attempts to conflate the two issues. But whether the Consulate Officials had authority from the Mexican government to form a joint venture is a separate question from whether they exercised that authority in their dealings with Box. Simply put, here, the first question was answered by the district court on remand in *Box I* and the second question was defaulted by the Consulate.

## IV.

In Box's second appeal, he appeals the denial of his additional attorney's fees in the amount of $265,315. We review the factual findings supporting the grant or denial of attorney's fees for clear error and the conclusions of law underlying the award *de novo*. *T.B. ex rel. Debbra B. v. Bryan Indep. Sch. Dist.*, 628 F.3d 240, 243 (5th Cir. 2010). The district court's interpretation of a statute is a question of law reviewed *de novo*. *Id.*

Box argued that he was entitled to additional attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code based on his status as a prevailing party. The Consulate responded that Box was not entitled to attorney's fees because Chapter 38 does not provide for attorney's fees against foreign governments. The district court agreed with the Consulate and denied the motion.

No. 14-10744 & 14-10953

We agree with the Consulate and the district court that Chapter 38 does not entitle Box to the $265,315 in attorney's fees. Chapter 38 specifically permits recovery of attorney's fees from an "individual or corporation" on certain types of claims. Tex. Civ. Prac. & Rem. Codes § 38.001. A foreign government or a foreign government's agent or instrumentality is not covered by the plain text of the statute. *See id.* Moreover, Texas courts have interpreted the provision to prohibit collection of attorney's fees from municipal governments, specifically citing the statute's word choice excluding government entities. *See, e.g.*, *City of Corinth v. NuRock Dev., Inc.*, 293 S.W.3d 360, 370 (Tex. App.—Fort Worth 2009, no pet.); *Dall. Area Rapid Transit v. Plummer*, 841 S.W.2d 870, 875 (Tex. App.—Dallas 1992, writ denied). Neither the plain text of § 38.001 nor the Texas courts' interpretation of it permits a party to recover attorney's fees from a foreign governmental entity. Thus, the district court correctly denied Box's motion for $265,315 in additional attorney's fees.

## V.

For the foregoing reasons, the district court's order granting the Consulate's Rule 59(e) motion and revised judgment is VACATED. This case is REMANDED with instructions to the district court to REINSTATE the original default judgment in full. The district court's order denying Box additional attorney's fees is AFFIRMED.

14