811 So.2d 1097 (2002)
MERLIN B. SMITH, INC., Plaintiff-Appellant,
v.
TRAVELERS PROPERTY CASUALTY, Defendant-Appellee.
No. 35,695-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 2002.
*1098 Davenport, Files & Kelly, L.L.P. by William G. Kelly, Jr., Monroe, for Appellant.
Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell, L.L.P. by Donald Armand, Jr., Shreveport, for Appellee.
Before WILLIAMS, PEATROSS & KOSTELKA, JJ.
PEATROSS, J.
This appeal arises from the trial court's granting of summary judgment against Plaintiff, Merlin B. Smith, Inc., and in favor of Defendant, Traveler's Property Casualty ("Travelers"), finding that the damages in this case were not covered by the insurance policy. It is from this judgment that Plaintiff appeals. For the reasons stated herein, we affirm.

FACTS
Plaintiff, a professional consulting forestry corporation, was hired by Harrell *1099 Plantation, Inc. ("Harrell") to select and mark for harvest the merchantable timber on its property. Don Toms ("Mr. Toms"), a "forestry technician" and employee of Plaintiff, was sent to Harrell's property to mark trees for harvest. He mistakenly, however, marked timber on property owned by Plum Creek Marketing, Inc. ("Plum Creek") that was adjacent to Harrell's property. As a result, Anthony Timberlands, the company who had purchased the marked timber from Plaintiff, began harvesting timber on Plum Creek's property. Plaintiff reimbursed Plum Creek for the damage and also paid Anthony Timberlands an amount equal to the value of the difference of the timber that it thought it was purchasing and the amount that it actually purchased. Plum Creek and Anthony Timberlands assigned and subrogated to Plaintiff all their rights in reference to this loss.
Timely notice of the loss was sent to Defendant, but Defendant denied the claim, stating that the negligence occurred as a result of the rendering of "professional services," which was excluded from coverage and, in addition, that the loss was not an "occurrence" as defined by the policy. Plaintiff then filed suit, and both parties filed motions for summary judgment. Plaintiff introduced into evidence affidavits of Merlin Smith (owner of Merlin Smith, Inc.), Mr. Toms and Plaintiffs attorney. Defendant introduced a copy of the insurance policy and the depositions of Merlin Smith and Mr. Toms. On February 12, 2001, the trial court denied Plaintiffs motion for summary judgment. On July 5, 2001, the trial court granted Defendant's motion for summary judgment and Plaintiff appeals.
On appeal, Plaintiff raises the following assignments of error: (1) the trial court erred in finding that the identifying of property lines constituted a "professional service" of a "consulting forester," (2) the trial court erred in finding that the damages were not caused by an "occurrence," and (3) the trial court erred in not granting Plaintiffs motion for summary judgment.

DISCUSSION
At issue is the "Commercial General Liability" section of the contract. In that section, the policy excludes from coverage "professional services." It lists "consulting forester" as a professional service, but it does not define "consulting forester."
Plaintiff first argues that the trial court erred in granting summary judgment for the insurer and finding that the insurer was not obligated to pay for the damage caused by the negligence of the insured. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish those ends. La. C.C.P. art. 966 A(2); Crocker v. Roach, 33,507 (La.App.2d Cir.8/23/00), 766 So.2d 672, writ denied, 2000-2684 (La.11/17/00), 774 So.2d 983. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. art. 966 C(1); Crocker v. Roach, supra.
Either party may move for summary judgment; the plaintiff's motion may be made at any time after the answer has been filed and the defendant's motion may be made at any time. La. C.C.P. art. 966. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, *1100 admissions on file and any affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.
The burden of proof remains with the mover. If the moving party does not have the burden of proof on the issue at trial, however, and points out that there is an absence of factual support for one or more elements essential to the non-moving party's claim, action or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial; if the non-moving party fails to do so, there is no genuine issue of fact. La C.C.P. art. 967; American Central Insurance Company v. Hilman, 32,315 (La. App.2d Cir.9/22/99), 744 So.2d 190. Article 967 further provides that, once a motion for summary judgment has been made and supported, the party opposing the motion may not rest on mere allegations in the pleadings, but must set forth, by way of affidavit or other receivable evidence, specific facts showing a genuine issue for trial. Osborne v. Vulcan Foundry, Inc., 577 So.2d 318 (La.App. 4th Cir.1991). Finally, the likelihood that a party will be unable to prove his allegations at trial does not constitute a basis for rendering summary judgment. Adams v. Travelers Insurance Company, 420 So.2d 507 (La.App. 2d Cir. 1982), writ denied, 422 So.2d 426 (La. 1982). This is because the function of the court on summary judgment is not to determine the merits of the issues involved, but only whether or not there is a genuine and material factual issue. Jones v. Davis, 233 So.2d 310 (La.App. 2d Cir.1970), writ refused, 256 La. 80, 235 So.2d 101 (La. 1970). In its motion for summary judgment, Defendant pointed out to the court that the "Commercial General Liability" section of the insurance contract excluded any damages arising from professional services of a "consulting forester," and that the damages were not caused by an "occurrence" as defined by the contract. Plaintiff opposed the motion, arguing that the locating of property lines was not a professional service and that the damages resulted from an "occurrence."
Appellate review of summary judgment is de novo, utilizing the same criteria that guides the trial court's granting of the judgment. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180.
An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Ledbetter v. Concord General Corp., 95-0809 (La.1/6/96), 665 So.2d 1166, citing Smith v. Matthews, 611 So.2d 1377 (La.1993). The parties' intent determines the extent of the coverage; and, if the wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Ledbetter, supra, citing Pareti v. Sentry Indemnity Co., 536 So.2d 417 (La.1988).
Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. Garcia v. St. Bernard Parish School Board, 576 So.2d 975 (La.1991). However, the rule of strict construction does not `authorize *1101 a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.' Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72 (1939).
Ledbetter, supra.
With the foregoing in mind, we discuss the exclusion of coverage of "professional services" of a "consulting forester" in the policy. The exclusion of professional services is typically found in comprehensive business liability policies, because coverage for such exposure is provided by special policies. See McCarthy v. Berman, 95-1456 (La.2/28/96), 668 So.2d 721, citing William Shelby McKenzie & H. Alston Johnson, III, Insurance Law and Practice, 15 Louisiana Civil Law Treatise §§ 201 (1986). Special policies covering professional liability do not replace comprehensive general liability insurance, but provide protection for professional errors and omissions that are usually excluded by comprehensive general liability policies. McCarthy, supra.
"Professional services, in its usual connotation, means services performed by one in the ordinary course of the practice of his profession, on behalf of another, pursuant to some agreement, express or implied, and for which it could reasonably be expected some compensation would be due." Natural Gas Pipeline Co. of America v. Odom Offshore Surveys, Inc., 889 F.2d 633 (5th Cir.1989), citing Aker v. Sabatier, 200 So.2d 94 (La.App. 1st Cir.1967). Furthermore, professional services are those that require the specialized training, judgment and the use of specialized tools or instruments. See Natural Gas Pipeline Co. of America, supra.
Plaintiff is a corporation doing business as a "consulting forester." Plaintiff's position, however, is that, since Mr. Toms' duties in marking the trees did not require identifying boundary lines, then his services were not professional as contemplated by the policy. The trial court found otherwise and we agree with that finding. In his deposition, Merlin Smith testified that the job of a "consulting forester" was to identify merchantable timber, mark it for harvest and then market and sell it. Additionally, he admitted that identifying boundary lines was an essential part of the services his corporation offered to its customers and that skill, training and judgment were required in identifying property lines. Mr. Toms was also deposed and testified that a forestry technician trains for six months to a year before going into the field alone and that "map-reading" was taught during the training process. Mr. Toms further testified that it was necessary to use a topographical map and a compass and that, as a result of his training and the fact that he had "spent a lifetime in the woods, ... [he knew] a boundary ... [when he found] one."
Plaintiff was hired by Harrell to perform services of a "consulting forester." Although the insurance contract does not define "consulting forester," Merlin Smith, as previously stated, admitted that locating boundary lines was an essential part of the business. The insurance contract can reasonably be interpreted to exclude a service that requires training, skill, experience, judgment and the use of specialized tools (topographical map and compass), especially when that service is an essential part of the business of Merlin B. Smith, Inc.
We find, therefore, that locating boundary lines, in this case, is a professional service of a "consulting forester" and that there is no genuine issue of material fact of same. Since the damages in this case *1102 arose from the rendering of professional services of a "consulting forester," we pretermit any discussion of Plaintiff's remaining assignments of error.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting the motion for summary judgment of Traveler's Property Casualty against Merlin B. Smith, Inc. is affirmed. Costs are assessed to Merlin B. Smith, Inc.
AFFIRMED.