# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 14, 2025

Lyle W. Cayce
Clerk

———————

No. 24-30173

———————

First Assembly of God Church Incorporated of Leesville Louisiana,

*Plaintiff—Appellee*,

*versus*

Church Mutual Insurance Company, S.I.,

*Defendant—Appellant*.

———————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:21-CV-378

———————————————————

Before Dennis, Haynes, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

This case involves an insurance dispute between First Assembly Church of God Incorporated of Leesville Louisiana ("FA") and Church Mutual Insurance Company, S.I. ("CM Insurance"). Hurricane Laura swept over FA on August 27, 2020, causing extensive damage to FA's buildings. FA quickly filed a claim with CM Insurance, but due to delayed

————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

payments and disagreements over coverage, FA invoked its policy's appraisal provision. CM Insurance resisted, but a district court ordered CM Insurance to comply. An umpire set an appraisal award, but CM Insurance continued to resist. The matter went to trial, and a jury found that CM Insurance owed FA the rough equivalent of the appraisal award less partial payments that CM Insurance had already made, penalties under a Louisiana statute due to bad faith (untimely payments), and attorneys' fees. CM Insurance now appeals, raising a multitude of issues. For the reasons that follow, we REMAND the attorneys' fees issues but otherwise AFFIRM.

## I.    Background

FA's campus includes a main chapel, a school, a gymnasium, a classroom building, and other buildings. FA insured its property with CM Insurance. The policy obligates CM Insurance to "pay for direct physical loss of or damages to Covered Property at the premises" from all "Risks of Direct Physical Loss," unless excluded or limited.

Hurricane Laura struck western Louisiana on August 27, 2022. The eye of the storm, which was a category two hurricane at the time, passed over FA's property. FA presented evidence that wind speeds in the surrounding area ranged from 100 to 130 miles per hour. The church's maintenance manager testified that, upon arriving after the storm had passed, it "looked like a bomb went off." Parts of the roofs and siding had blown off, the electrical system was damaged, power lines were down, the church's sign had snapped in half, and damage to the exterior had allowed water to enter and damage the interior property.

On the same day that the storm hit, FA's then-pastor, Doc "Jack" Osteen, made a claim with CM Insurance. The next day, CM Insurance sent a letter to FA acknowledging the claim.

Shortly after, FA signed a contract with Mooring USA, a company specializing in flood mitigation and restoration. Mooring restored power and worked to dry out and salvage the interior areas of the property.

Over the next few months, CM Insurance did some inspections and made some low payments but declined to pay in full what FA contended was necessary.

Given the dispute over covered damages, on February 8, 2021, FA invoked the policy's appraisal provision. Three days later, FA filed this lawsuit. CM Insurance responded that "the request for appraisal and the suit are premature under the requirements set forth in the Policy." CM Insurance then filed a motion to dismiss for failure to state a claim, stay the case, and opt out of the appraisal process. The district court denied the motion and appointed an umpire. It also ordered CM Insurance to pick an appraiser within seven days of its ruling and "to complete the appraisal process within 30 days thereafter."

FA's appraiser, Randal Thompson, appraised the loss at $7,610,176.66. CM Insurance's appraiser, Kenneth Jones, appraised the loss at $1,110,267.38. The umpire, Cade Cole, settled on an appraisal award of $5,290,123.88. CM Insurance issued a final payment of $15,701.58.

Following the appraisal process, FA hired a contractor, Hero Design, to perform the repair work identified in the appraisal award. Their contract obligated FA to pay Hero Design $4,498,839.91 for all the remaining repairs and directed the parties to the Xactimate[1] report for details. At trial, Osteen testified that the repairs have not been fully completed due to a lack of money from CM Insurance.

---

[1] Xactimate is an estimating program.

3

No. 24-30173

FA and Hero Design also executed a "Conditional Assignment, Subrogation and Irrevocable Direction to Pay & Grant of Lien on Insurance Proceeds Accessory Agreement." Based on that contract, CM Insurance unsuccessfully moved to join Hero Design as a required party just before trial.

The case proceeded to trial in November 2023. Both sides presented documentary evidence and testimony. The jury found that (1) CM Insurance had arbitrarily, capriciously, or without probable cause failed to make timely payments six times; (2) CM Insurance owed $4,791,911.28 in additional funds to FA; and (3) CM Insurance's failure to pay the unpaid amount was arbitrary, capricious, or without probable cause. In its memorandum ruling and final judgment, the district court assessed a 50% penalty against CM Insurance on the unpaid and untimely-paid amount. It also awarded attorneys' fees in the amount of 33.3% of the total award. In sum, the district court entered judgment in favor of FA in the amount of $9,858,472.48, with interest. CM Insurance timely appealed.

## II.   Jurisdiction

The district court exercised diversity jurisdiction pursuant to 28 U.S.C. § 1332.[2] We have appellate jurisdiction over the district court's final order. 28 U.S.C. § 1291. Because this is a diversity case, we apply the substantive law of Louisiana and the procedural rules of the federal courts. *Jack v. Evonik Corp.*, 79 F.4th 547, 555 (5th Cir. 2023).

---

[2] We previously sent a limited remand to the district court for the purpose of establishing the existence of diversity jurisdiction which had not been properly stated in the district court previously but was on the limited remand.

No. 24-30173

## III.    Discussion

CM Insurance has raised a large number of issues on appeal, some of which lack any merit.  We will address as necessary below.

### A. Rulings involving Hero Design

CM Insurance first argues that the district court erred in multiple rulings involving Hero Design.

### 1.  *Assignment of rights*

A threshold question here is whether FA assigned its rights to Hero Design.  On mixed questions of law and fact, we review "the district court's fact findings for clear error and its legal conclusions and application of law to fact de novo."  *Trans-Serve, Inc. v. United States*, 521 F.3d 462, 466 (5th Cir. 2008) (italics omitted).

FA's argument that the assignment was invalid is correct.[3]  Under Louisiana law, "[a] right cannot be assigned when the contract from which it arises prohibits the assignment of that right."  LA. CIV. CODE ANN. art. 2653.  Here, the contract from which the assignment arises—FA's insurance policy—prohibits the assignment of rights under the policy without the written consent of CM Insurance.  CM Insurance never consented in writing to FA assigning its rights to Hero Design, so the purported assignment is invalid under Louisiana law.

---

[3] FA had several arguments.  Because we agree with FA on this one, we need not reach the others.

5

No. 24-30173

We therefore conclude that the district court did not err in holding that there is no valid assignment governing this case.[4]

### 2. *Motion in limine related to the Hero Design contract amount*

CM Insurance also asserts that the district court erred by striking its October 20, 2023, motion in limine. In its motion, CM Insurance asked the district court to (1) essentially dismiss FA's claim, in part, by ruling that FA could not seek at trial certain costs due to a supposed lack of supporting proof, and (2) deny FA the right to recover anything due to its alleged assignment of insurance benefits to Hero Design. The district court found that the motion in limine was a "dispositive motion because its purpose [was to] dispose of [FA's] claims" and therefore held that it was untimely, as the deadline for dispositive motions had passed.

We review for abuse of discretion both the denial of a motion in limine and a district court's enforcement of its scheduling orders. *Van Winkle v. Rogers*, 82 F.4th 370, 374 (5th Cir. 2023) (motion in limine); *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (scheduling orders).

CM Insurance offers no rebuttal to the district court's classification of its motion as dispositive. Indeed, CM Insurance's characterization of the district court's order is only half right. The district court did not order that invoices for items or repairs that are unsupported should be excluded from trial. Instead, it granted a motion to compel, set a deadline for production, held that documents produced after that deadline will not be admitted at trial, and set a deadline for motions in limine related to that category of documents.

---

[4] Because the assignment was invalid, the district court did not abuse its discretion by refusing to admit evidence of it, nor did it abuse its discretion by denying CM Insurance's motion to join Hero Design as a necessary party.

6

So, when CM Insurance filed a motion in limine seeking to dismiss in part FA's claims and deny FA's right to recover based on its alleged assignment, the district court did not abuse its discretion by categorizing that motion as an untimely dispositive motion.

### 3. *Adverse inference*

Finally, CM Insurance argues that the district court abused its discretion by refusing to apply an adverse inference against FA because it did not call Chad Hebert of Hero Design to testify at trial.

FA originally listed Hebert on its will call list but, after the district court excluded the assignment issue from trial, FA informed the court that it would not be calling him as a witness but that CM Insurance could subpoena him, if it wanted. Whether to grant an adverse inference instruction is reviewed for abuse of discretion. *United States v. Santos*, 589 F.3d 759, 764 (5th Cir. 2009).

Here, the district court did not abuse its discretion by denying an adverse inference request. CM Insurance makes a colorable argument that the district court expressed an erroneous view of the law by apparently basing its decision in part on Hebert's being within the subpoena power of the court. *United States v. Chapman*, 435 F.2d 1245, 1247 (5th Cir. 1970) ("[M]ere physical presence at the trial or accessibility for service of a subpoena does not determine a potential witness's availability."). But a witness's accessibility via subpoena is not *irrelevant* to the question of the witness's equal availability. Rather, the caselaw merely establishes that it is not *dispositive* because courts must consider whether the witness is controlled by one of the parties (i.e., is a party's employee or lawyer). *Id.*; *Santos*, 589 F.3d at 764; *United States v. Wilson*, 322 F.3d 353, 363 n.14 (5th Cir. 2003). Here, Hebert was not akin to FA's employee or lawyer. Although CM Insurance argues that he was under FA's control because he was a third-party

contractor for FA, CM Insurance cites no caselaw in which a court has applied an adverse inference on that basis.[5] Also, the district court heard argument that Hebert's testimony would have been cumulative, in which case an adverse inference cannot apply. *Wilson*, 322 F.3d at 363. Accordingly, the district court did not abuse its discretion by declining to apply an adverse inference here.

## B. Damages valuation

Next, CM Insurance asserts that the damages award violates the policy because it is not based on the replacement cost as of the time of loss or damage. FA responds that the policy does not require damages to be valued as of the time of loss in the present case. According to FA, the policy's appraisal provision was invoked and therefore governs the damages question.

The proper interpretation of an insurance policy presents a legal question that we review de novo. *McDonnel Grp., L.L.C. v. Starr Surplus Lines Ins.*, 15 F.4th 343, 346 (5th Cir. 2021). The parties agree that Louisiana law governs the interpretation of the policy at issue.

"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ANN. art. 2046. "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Cadwallader v. Allstate Ins.*, 2002-1637, p. 4 (La. 6/27/03), 848 So. 2d 577, 580. "Where, however, an

---

[5] CM Insurance also argues that "parties are required to make all *will call* witnesses available at trial." CM Insurance cites *Talbot v. Electric Insurance Company*, No. 17-299-SDD-EWD, 2018 WL 8224789 (M.D. La. Nov. 16, 2018). But *Talbot* does not say that. Instead, it says that "[i]f either party fails to produce a witness designated as 'Will Call' at the trial, the Court will entertain a motion for an adverse presumption instruction, the merits of which will be determined at the time such Motion, if any, is made." *Id.* at *2.

insurance policy includes ambiguous provisions, the '[a]mbiguity . . . must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions.'" *Vanderbrook v. Unitrin Preferred Ins.* (*In re Katrina Canal Breaches Litig.*), 495 F.3d 191, 207 (5th Cir. 2007) (quoting *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94), 630 So. 2d 759, 763). "If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured." *Id.* (quoting *La. Ins. Guar. Ass'n*, 630 So. 2d at 764).

While the valuation section of the policy states that both the Replacement Cost and Actual Cash Value—alternative ways to value the loss—require the value to be calculated "as of the time of loss or damage," the appraisal section of the policy does not. Because the appraisal provision contains its own mechanism for valuing the loss, devoid of any requirement that the value be calculated as of the time of loss or damage, we conclude that that requirement does not apply here. Even assuming arguendo that the policy is ambiguous in this regard, we must construe the policy "in favor of the insured." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 207 (quoting *La. Ins. Guar. Ass'n*, 630 So. 2d at 764). Here, that means construing the policy to give effect to the valuation reached in the appraisal award.[6]

---

[6] On this issue, FA's invocation of the appraisal process differs from *First Baptist Church of Iowa v. Church Mutual Insurance*, 105 F.4th 775 (5th Cir. 2024), which held that the district court erred by failing to honor the "as of the time of loss or damage" language in a policy. *Id.* at 788. We also disagree with CM Insurance's argument that the appraisal provision is inapplicable because the district court ordered the appraisal. FA made an invocation, but CM insurance rejected it, which is the only reason FA had to ask the court to enforce it. Accordingly, we reject CM Insurance's argument that the appraisal provision is inapplicable.

Accordingly, we conclude that the damages award did not violate the policy's language.[7]

## C. Jury instructions

CM Insurance also contends that the district court erred in its jury instructions on (1) the requirements for proof of loss, and (2) the legal significance of the appraisal award.

We review timely objections to jury instructions "under an abuse of discretion standard, affording the trial court substantial latitude in describing the law to the jurors." *Jimenez v. Wood County*, 660 F.3d 841, 845 (5th Cir. 2011) (en banc) (quotation omitted).

### 1. Proof of loss

CM Insurance first argues that the district court abused its discretion by refusing to instruct the jury that a satisfactory proof of loss must be in writing. That argument is foreclosed by *First Baptist Church of Iowa v. Church Mutual Insurance*, 105 F.4th 775, 794 (5th Cir. 2024). Accordingly, the district court did not abuse its discretion by omitting "written" from the instruction on a satisfactory proof of loss.

### 2. Significance of appraisal award

CM Insurance also argues that the district court erred by instructing the jury that "[c]ontractually specified appraisal awards are presumed accurate."

According to CM Insurance, this instruction contradicts the district court's earlier ruling that the appraisal award is not binding. CM Insurance

---

[7] We therefore need not reach FA's argument that CM Insurance did not preserve this issue below.

also points to the following sentence in the policy's appraisal provision: "If there is an appraisal, we will still retain our right to deny the claim."

FA responds that the preceding sentence does not change that the appraised *value* of the loss can be presumed accurate, even if the insurer retains the right to deny certain claims that comprise the appraisal award because, for example, they fall under a policy exclusion.

We agree with FA.  The instruction accurately characterizes the policy's appraisal provision, which states that the appraisal award "shall determine the amount of actual cash value and loss," while preserving CM Insurance's right to deny the claim.  As to the district court's description of the appraisal award as non-binding, that description does not necessarily conflict with the instruction at issue.  An appraisal can be "presumed accurate" without being "binding."  In sum, CM Insurance has not met its burden of showing that "the charge as a whole creates substantial and ineradicable doubt whether the instructions properly guided the jury in its deliberations." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 291–92 (5th Cir. 2019) (internal quotation marks and citation omitted); *see also Jimenez*, 660 F.3d at 845 (stating that trial courts are afforded "substantial latitude in describing the law to the jurors" (quotation omitted)).

## D. The jury's award for repair costs

We turn next to CM Insurance's assertion that the jury clearly erred in its weighing of the evidence on the following categories of repairs: (1) interior damage, (2) the HVAC systems, (3) the new sign, and (4) other miscellaneous repairs.

Determinations "concerning causation and the amount of damages are factual findings subject to clear error review." *First Baptist*, 105 F.4th at 790.  "We decline to encroach on the province of the jury as finder of fact in the absence of clear error or some indication that reasonable jurors could not

possibly have arrived at the verdict." *Woodfield v. Bowman*, 193 F.3d 354, 365 (5th Cir. 1999). "A finding is clearly erroneous if it is without substantial evidence to support it, the [factfinder] misinterpreted the effect of the evidence, or this court is convinced that the findings are against the preponderance of credible testimony." *First Baptist*, 105 F.4th at 785 (quotation omitted). We reverse under the clearly erroneous standard "only if we have a definite and firm conviction that a mistake has been committed." *Id.* (quotation omitted). We may not reverse merely because "sitting as the trier of fact, [we] would have weighed the evidence differently." *Id.* at 786 (quotation omitted).

### 1. *Interior damages*

CM Insurance challenges the jury's award for interior damages, arguing that they were not caused by a storm-created opening, as required by the policy.

"[I]t is well-settled Louisiana law that *all* insurance contract exclusion provisions are construed strictly . . . against the insurer, and any ambiguity is construed in favor of the insured." *Cochran v. B.J. Servs. Co. USA*, 302 F.3d 499, 502 (5th Cir. 2002) (quoting *Merlin B. Smith, Inc. v. Travelers Prop. Cas.*, 35,695, p. 5 (La. App. 2 Cir. 2/27/02), 811 So. 2d 1097, 1100 (internal quotation marks omitted)). "It is also well-settled Louisiana law that the insurance provider has the burden of proving that an exclusion unambiguously applies." *Id.* (citing *Arnette v. NPC Servs., Inc.*, 2000-1776, p. 6 (La. App. 1 Cir. 2/15/02), 808 So. 2d 798, 802).

There was sufficient evidence in support of FA regarding the main chapel on their property. Thus, despite testimony from CM Insurance's witnesses to the contrary, the jury was well within reason to conclude that storm-created openings caused the interior damage to the chapel.

No. 24-30173

Similarly, expert evidence about the school building on FA's property showed water damage that was caused by Hurricane Laura. Considering the evidence presented, there seems to be little doubt that a storm-created opening caused interior damage to the school building.

Turning to the gymnasium on FA's property, an expert testified about water in that building that clearly came from the hurricane. Based on the expert's testimony, the jury was within reason to conclude that a storm-created opening caused interior damage to the gymnasium.

Finally, FA's expert testified about the classroom building. Based on that testimony, we are unable to say that "reasonable jurors could not possibly have" concluded that a storm-created opening caused the interior damage to the classroom building. *Woodfield*, 193 F.3d at 365.

### 2. *HVAC systems*

CM Insurance also challenges the jury's award for the replacement of all HVAC systems on the property. According to CM Insurance, the evidence supported replacement of only one unit.

FA's appraiser based his HVAC replacement valuation on a work proposal from Randy's Complete Conditioning, which recommended replacing all HVAC systems. The work proposal notes identify extensive damage to each of the HVAC systems caused by water damage, wind, and falling debris. FA's appraiser testified that he found the work proposal reliable and therefore included it in his appraisal. He also testified that, in response to concerns about the work proposal from CM Insurance's appraiser, the owner of Randy's drafted a detailed letter explaining his reasoning, which convinced the umpire to include the proposal in the appraisal award. Based on this testimony, we will not disturb the jury's award for replacement of the HVAC systems.

### 3. New sign

According to CM Insurance, the jury improperly awarded funds for an upgraded sign rather than a standard replacement. FA responds that the jury already discounted the appraisal award by about $36,000, which is almost exactly the difference between the value of the old sign and the upgraded replacement sign (about $34,000). We decline to disturb the jury's award on this basis.

### 4. Miscellaneous

Finally, CM Insurance presents a chart of miscellaneous repairs and argues that these costs were unnecessarily included in the jury award because CM Insurance's expert testified that they were not necessary. FA's expert disagreed. The jury was free to find FA's expert more credible than CM Insurance's. *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1334 (5th Cir. 1996) (declining to "disturb the jury's credibility determinations" because such decisions "are completely within the province of the jury").

## E. Sufficient proof of repair costs

Next, CM Insurance argues that FA failed to establish the correct dollar amount of the repairs that have been completed or the damages left to repair. As stated above, determinations "concerning causation and the amount of damages are factual findings subject to clear error review." *First Baptist*, 105 F.4th at 790.

CM Insurance points out that, under Louisiana law, "[d]amages may be predicated on estimation only when the loss has not been repaired. If the damaged property has been restored to its former condition by repair, the proper basis for assessing the damage is the repair bill." *Volkswagen of Am. v. Robertson*, 713 F.2d 1151, 1169 (5th Cir. 1983) (quoting *Lambert v. Allstate Ins.*, 195 So. 2d 698, 700 (La. Ct. App. 1967)). "Plaintiff must produce the best

14

evidence available in support of his claim." *Id.* (quoting *Lambert*, 195 So. 2d at 700).

FA responds that the jury's award was roughly the appraisal award minus CM Insurance's partial payments.

We conclude that the jury did not clearly err in its valuation of the repair costs. FA presented its invoices from Mooring for mitigation, and Structural Wrap for roof wrapping. It also presented its contract with Hero Design to pay $4,498,839.91 for the remaining items in the appraisal award. Although CM Insurance characterizes this document as a mere estimate, it is indeed a signed contract between FA and Hero Design. It also states "For Scope of Work, See Xactimate Report," which is a reference to the very detailed appraisal award produced using Xactimate. We fail to see how this is not "the best evidence available in support of [its] claim." *Volkswagen of Am.*, 713 F.2d at 1169 (quoting *Lambert*, 195 So. 2d at 700).

## F. Bad faith

CM Insurance contends that the jury's finding of bad faith, resulting in an award of penalties, was unsupported by any evidence.

An insurer is subject to a 50% penalty on the amount found to be due under LA. REV. STAT. ANN. § 22:1892 if "(1) an insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *First Baptist*, 105 F.4th at 793 (quotation omitted). A factfinder's "determination that an insurer's conduct is arbitrary or capricious is a factual finding that 'should not be disturbed on appeal absent manifest error.'" *Id.* at 795 (quoting *Reed v. State Farm Mut. Auto Ins.*, 2003-0107, p. 14 (La. 10/21/03), 857 So. 2d 1012, 1021).

"The Supreme Court of Louisiana has held that an insurer who fails to pay the insured the undisputed portion of the claim within the statutory

time limit is, 'by definition, arbitrary, capricious or without probable cause.'" *Id.* (quoting *La. Bag Co. v. Audubon Indem. Co.*, 2008-0453 at pp. 16–17 (La. 12/2/08), 999 So. 2d 1104, 1116). "Regardless of any disputed amounts in a claim for which there are substantial, reasonable and legitimate questions as to the extent of its insurer's liability or of the insured's loss, an insurer must still pay any undisputed amount over which reasonable minds could not differ." *Id.* (alteration adopted) (quoting *La. Bag Co.*, 2008-0453 at p. 24, 99 So. 2d at 1120). Also, "[w]here the exact extent of the damages is unclear, an insurer must tender the reasonable amount which is due." *Id.* (quoting *La. Bag Co.*, 2008-0453 at p. 15, 999 So. 2d at 1115). Finally, "if part of a claim for property damage is not disputed, the failure of the insurer to pay the undisputed portion of the claim within the statutory delay will subject the insurer to penalties *on the entire claim*." *Grilleta v. Lexington Ins.*, 558 F.3d 359, 370 (5th Cir. 2009) (per curiam) (quoting *Warner v. Liberty Mut. Fire Ins.*, 543 So. 2d 511, 515 (La. Ct. App. 1989)).

We conclude that the jury did not commit manifest error by finding bad faith. Indeed, CM Insurance admitted late payments and there was evidence of the same over several months. Even if *part* of the damages were disputed, that is not enough to save CM Insurance. *See First Baptist*, 105 F.4th at 795 ("Where the exact extent of the damages is unclear, an insurer must tender the reasonable amount which is due." (quotation omitted)). It could have tendered a reasonable, undisputed amount within 30 days of obtaining proof of loss, which is enough to have triggered the 50% penalty for the entire award. *See Grilleta*, 558 F.3d at 370.

## G. The Renlund deposition

During trial, CM Insurance introduced a video deposition of Lynn Renlund, CM Insurance's corporate representative. The video played to the jury included questions about disparaging comments Renlund made off

record.  Although CM Insurance was the one that played the video, it sought a mistrial on that basis.  We need not address the merits of CM Insurance's current challenge because "a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted."  *Blessey Marine Servs., Inc. v. Jeffboat, L.L.C.*, 771 F.3d 894, 899 (5th Cir. 2014) (quoting *Ohler v. United States*, 529 U.S. 753, 755 (2000)).

### H. Motions for directed verdict, judgment as a matter of law, and a new trial

In the last paragraph of its brief, CM Insurance argues that "for all the reasons presented herein, which are incorporated," we should reverse the district court's denial of its motions for directed verdict, judgment as a matter of law, and a new trial.  In a separate case, we recently held that CM Insurance forfeited the same arguments by briefing them in the same way. *First United Pentecostal Church v. Church Mut. Ins.*, 119 F.4th 417, 429 (5th Cir. 2024).  For the same reasons, we conclude that CM Insurance forfeited those arguments here.

### I. Attorneys' fees

There are two issues involving attorneys' fees before us.  The first is FA's request for a limited remand for the district court to award additional attorneys' fees incurred during the appeal.  The second is whether the trial court applied the right percentage for attorneys' fees when calculating the total judgment.

#### 1. *Fees for appeal*

FA seeks to recover attorneys' fees incurred on appeal.  FA proposes a few different options.  It first proposes a limited remand for the district court to assess appellate attorneys' fees.  Alternatively, FA asks the panel to increase the district court's attorneys' fee award to 40% to compensate for additional fees incurred on appeal and in accordance with its contingency

agreement. Finally, FA requests leave to file a motion to recover that amount under Fifth Circuit Rule 47.8.

We have "held that this issue may properly be raised before us, even if only raised on appeal and not considered below." *Zimmerman v. City of Austin*, 969 F.3d 564, 571 (5th Cir. 2020) (internal quotation marks and citation omitted). "The rules of this court anticipate that such requests will be made and outline the documentation required to support such a request." *Id.* (citing 5TH CIR. R. 47.8). But the "preferred procedure is to remand for the determination of the amount of such an award." *Id.* (quotation omitted). That follows from the "recogni[tion] that the issue of appellate attorney's fees is a matter for the district court following the resolution of an appeal." *Id.* (alteration adopted) (internal quotation marks and citation omitted).

We opt to follow *Zimmerman* and remand to the district court for a determination of appellate attorneys' fees, if any.

### 2. *Percentage*

The district court simultaneously found that "a 30% attorney fee award is reasonable" and calculated the award using a 33.3% contingency fee. CM Insurance now asks us to correct the judgment to reflect a 30% fee award. FA makes logical arguments that the district court likely intended a 33.3% award of attorneys' fees. For example, FA requested an award of fees between 33.3% and 40%. Also, "[i]n the Western District of Louisiana, the customary contingency fee for representation of plaintiffs ranges from 33 1/3% to 50%." *Burford v. Cargill, Inc.*, No. 05-0283, 2012 WL 5471985, at *3 (W.D. La. Nov. 8, 2012) (internal quotation marks and citation omitted). Rather than speculate about the district court's intent, and because we are already remanding the question of appellate attorneys' fees, we remand this issue to the district court for clarification.

No. 24-30173

## IV.    Conclusion

In sum, we REMAND the two questions about attorneys' fees to the district court and otherwise AFFIRM.